

FILED

SEP 0 8 2005

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|   |   |   |
|---|---|---|
| EVELYN A. BLACKMOON; ROBERT W. COURNOYER; SHARON DRAPEAU; and ALAN FLYING HAWK, | * * * * * | CIV 05-4017 |
| Plaintiffs, | * | |
| vs. | * * | MEMORANDUM OPINION AND ORDER |
| CHARLES MIX COUNTY; CARROL ALLEN; KEITH MUSHITZ; and HERMAN PETERS, in their official capacities as members of the Charles Mix County Commission; and NORMAN CIHAK, in his official capacity as Auditor of Charles Mix County, | * * * * * * * * | |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs filed a Motion for Summary Judgment, Doc. 14, seeking summary judgment in their favor on their one-person-one-vote claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as alleged in count one of their complaint. Defendants filed a Motion to Stay Plaintiffs' summary judgment motion based upon the outcome of a preliminary injunction motion in the case of *Quick Bear Quiver v. Nelson*, CIV 02-5069 (D.S.D.). Defendants seek to amend their answer to assert affirmative defenses that they have not yet raised. (Doc. 24.) Defendants also filed a Motion for Summary Judgment, Doc. 36, seeking summary judgment in their favor on all of Plaintiffs' claims based upon the affirmative defenses of laches and expiration of the statute of limitations. The Motion to Stay will be denied as moot because the decision has been issued in *Quick Bear Quiver*. Defendants will be allowed to amend their answer and Defendants' summary judgment motion will be denied. For the reasons set forth below, the parties will be allowed to conduct discovery regarding Plaintiffs' summary judgment motion.

## BACKGROUND

Plaintiffs are Native American qualified voters and residents of Charles Mix County. They filed this action alleging that the county commission districts in Charles Mix County: (1) are malapportioned in violation of the one-person-one-vote standard of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) dilute Native American voting strength in violation of Section 2 of the Voting Rights Act of 1965 ("VRA"), 79 Stat. 437, as amended, 42 U.S.C. § 1973; (3) were enacted or are being maintained with the discriminatory purpose of denying or abridging the right of Native Americans to vote on account of race or color in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the VRA.

According to the 2000 Census, the total population of Charles Mix County is 9,350 persons, of whom 2,754 persons (29.45%) identify themselves as Native American. Charles Mix County is governed by a three-member County Commission elected from three single-member districts. Each commissioner is elected by the voters of his or her district. The total population in each of the three districts is as follows: (1) District 1 has 3,443 persons; (2) District 2 has 3,057 persons; and (3) District 3 has 2,850 persons. The current district boundaries have been in place since 1968 and the County Commission most recently refused to redistrict in February 2002. The Plaintiffs notified the County Commission by letter in November 2001 of their belief that the existing commissioner districts were unconstitutional. Nevertheless, the County Commission refused to redistrict in February 2002 as allowed by South Dakota law.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party

2

to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting Fed.R.Civ.P. 56(e)).

## 1. Plaintiffs' Motion for Summary Judgment

In *Reynolds v. Sims*, 377 U.S. 533, 568 (1964), the Supreme Court held that, "the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis." Thus, a State is required to "make an honest and good faith effort to construct districts ... as nearly of equal population as is practicable," for "it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters." *Id.* at 577. In addition, the Supreme Court recognized that, "some deviations from population equality may be necessary to permit the States to pursue other legitimate objectives such as 'maintain[ing] the integrity of various political subdivisions' and 'provid[ing] for compact districts of contiguous territory.'" *Brown v. Thomson*, 462 U.S. 835, 842 (1983) (quoting *Reynolds*, 377 U.S. at 578). Recognizing the importance of these considerations, the Supreme Court stated, "[a]n unrealistic overemphasis on raw population figures, a mere nose count in the districts, may submerge these other considerations and itself furnish a ready tool for ignoring factors that in day-to-day operation are important to an acceptable representation and apportionment arrangement." *Gaffney v. Cummings*, 412 U.S. 735, 749 (1973).

Considering the above, the Supreme Court held that, "minor deviations from mathematical equality among state legislative districts are insufficient to make out a prima facie case of invidious discrimination under the Fourteenth Amendment so as to require justification by the State." *Gaffney*, 412 U.S. at 745. Summarizing several prior decisions, the Supreme Court stated, "as a general matter, ... an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations." *Brown*, 462 U.S. at 843. If an apportionment plan has a population deviation of 10% or above, however, it "creates a prima facie case of discrimination and therefore must be justified by the State." *Id.* The Supreme Court explained that, "[t]he ultimate inquiry, therefore, is whether the legislature's plan 'may reasonably be said to advance [a] rational state

3

policy' and, if so, 'whether the population disparities among the districts that have resulted from the pursuit of this plan exceed constitutional limits.'" *Id.* (quoting *Mahan v. Howell*, 410 U.S. 315, 328 (1973)). Given that the present case involves county commissioner districts, the Court notes the Supreme Court recognized, for a variety of reasons, "slightly greater percentage deviations may be tolerable for local government apportionment schemes." *Abate v. Mundt*, 403 U.S. 182, 185 (1971).

The ideal district size in the present case is 3,117 (9,350 persons divided by 3 districts). Utilizing total population figures according to the 2000 Census, District 1 is overpopulated by 326 persons, or 10.46%. District 2 is underpopulated by 60 persons, or 1.92%. District 3 is underpopulated by 267 persons, or 8.57%. Thus, the maximum deviation is 593 persons, or 19.02%.[1]

Plaintiffs assert the total deviation of 19.02%, "far exceeds the constitutional limit on population inequality for local offices." (Doc. 15, p. 6.) Thus, Plaintiffs argue they are entitled to summary judgment on their one-person-one-vote claim based solely on the population inequality. Plaintiffs cite *Mahan v. Howell*, 410 U.S. 315, 329 (1973), for the proposition that, "[p]lans with a total deviation above 16.4 percent are unconstitutional on their face and are probably never

---

[1]The Fourth Circuit concisely described the mathematical calculation for determining the maximum population deviation among electoral districts:

> To determine compliance with the one person, one vote principle courts usually analyze the apportionment plan in terms of the maximum population deviation among the districts. Generally, to calculate maximum deviation, the court first constructs a hypothetical ideal district by dividing the total population of the political unit (*e.g.* state or county) by the total number of representatives who serve that population. Then, the court determines how much the actual population of each district varies from the population of the ideal district. This deviation is expressed as a percentage of the ideal population. Maximum deviation is the sum of the absolute value of the deviation of the district with the smallest population and that of the district with the largest population.

*Daly v. Hunt*, 93 F.3d 1212, 1216, n. 2 (4th Cir. 1996) (citing *Board of Estimate of City of New York v. Morris*, 489 U.S. 688, 700 & n. 7 (1989); *Connor v. Finch*, 431 U.S. 407, 416-17 (1977)).

4

justifiable." (Doc. 15, p. 5.) In *Mahan*, however, the Court did not find the plan at issue, with a 16.4 percent deviation, violated the plaintiffs' Fourteenth Amendment rights. Although the Court found the 16.4 percent deviation "may well approach tolerable limits," the Court held "we do not believe it exceeds them." *Mahan*, 410 U.S. at 329. The Court found Virginia's policy "of maintaining the integrity of political subdivision lines in the process of reapportioning a state legislature, was a rational policy justifying disparities in population among districts." *See id.* Thus, the *Mahan* Court did not hold, as Plaintiffs urge the Court to find, that total deviations above 16.4% are unconstitutional on their face and are not justifiable.

In their Reply Brief, Doc. 23, Plaintiffs assert the holding in *Connor v. Finch*, 431 U.S. 407, 417 (1977), "forecloses the defendants' attempt to justify the deviations in the challenged plan." (Doc. 23, p. 8.) Citing *Connor*, 431 U.S. at 417, Plaintiffs state that, "the Supreme Court described deviations of 16.5% and 19.3% as 'substantial' and held that they exceeded constitutional limits despite the State's clear and legitimate policy of keeping political subdivisions intact." (Doc. 23, p. 8.) This summary of the holding in *Connor*, however, significantly fails to account for the fact that the plan at issue in *Connor* was a *court-ordered* plan, rather than a State plan, and the Supreme Court held that, "[a] court-ordered plan ... must be held to higher standards than a State's own plan." *Chapman v. Meier*, 420 U.S. 1, 26 (1975). Thus, the Supreme Court's holding in *Connor* does not dictate that judgment must be entered in favor of Plaintiffs on their Equal Protection claim.

Although Plaintiffs are not entitled to judgment solely based on the total deviation of 19.02% in this case, they have established a prima facie case of discrimination, which must be justified by Charles Mix County. *See Brown*, 462 U.S. at 842-43. In a preliminary effort to justify the deviation, Defendants introduced the Affidavit of Carrol Allen, Doc. 19, who is the chairperson of the Charles Mix County Commission. Allen states the current voting districts do not split any townships, towns or cities and that, "Charles Mix County has never split townships, towns, or cities in creating its voting precincts." (Doc. 19.) Despite the introduction of Allen's Affidavit describing the county policy, Defendants contend they need to conduct discovery to determine whether population equality is possible if political boundaries, such as townships and cities, are to be kept intact in the process

5

of redistricting the county. As explained below, the Court will allow a short period for discovery on this issue.

Plaintiffs contend in their Reply Brief that a *county* policy is not relevant to their Equal Protection claim and that such a policy can never justify a deviation from population equality. (Doc. 23, p. 3-6.) Rather, Plaintiffs argue only a *state* policy could be used by Defendants in an attempt to justify the deviation from population equality that exists in Charles Mix County and that Defendants have produced no such evidence of a *state* policy of keeping townships, cities and towns intact when redrawing commissioner districts. The Court disagrees and finds this argument to be without merit. The Supreme Court has explicitly held that a "long tradition of overlapping functions and dual personnel in *Rockland County government*," in combination with the fact that the plan before the court did not "contain a built-in bias tending to favor particular political interests or geographic areas," did not violate the Equal Protection Clause. *Abate v. Mundt*, 403 U.S. 182, 186-87 (1971). Thus, Defendants are not required to rely on a state policy; rather, they may rely on a Charles Mix County policy or tradition in their attempt to justify the total deviation in this case.

Although the evidence in the record is sparse regarding the existence of a county policy of maintaining the integrity of political subdivision lines, the Court will assume for purposes of the Plaintiffs' summary judgment motion that the policy exists. Assuming the policy exists, the next issue is whether it can reasonably be said that the county policy advanced by the Defendants to justify the deviation from population equality for Charles Mix County commissioner districts "is, indeed, furthered by the plan adopted by the [county]." *Mahan*, 410 U.S. at 326. In finding that the state reapportionment plan reasonably furthered the State of Virginia's policy of preserving existing political subdivisions, the *Mahan* Court relied on "uncontradicted evidence ... to the effect that the legislature's plan, subject to minor qualifications, 'produces the minimum deviation above and below the norm, keeping intact political boundaries.'" *Id.* There is no such evidence in this case. Rather, it appears from the evidence produced by Plaintiffs that the total deviation in the existing plan is far greater than necessary to further the county's asserted policy of keeping townships, cities

6

and towns intact for purposes of drawing Charles Mix County commissioner districts. (*See* Second Declaration of William S. Cooper, Doc. 23, Ex. A.)

Defendants request, pursuant to Federal Rule of Civil Procedure 56(f), that they be allowed to conduct discovery on the issue of whether population equality is possible if political boundaries, such as townships and cities, are to be kept intact in the process of redistricting the county. The Court recognizes the Defendants have been focusing their efforts regarding this litigation in lobbying for and seeking to enforce House Bill 1265, which was passed by the South Dakota legislature. House Bill 1265 would permit Defendants to redistrict under certain circumstances at a time other than currently allowed by SDCL § 7-8-10 (2004).[2] It appears from the records in this case and *Quick Bear Quiver*, CIV 02-5069, that Defendants are seeking to redistrict in an effort to render Plaintiffs' claims moot in this case, which Defendants contend will prevent Plaintiffs from recovering attorney's fees in this action. Despite the lack of focus on conducting discovery in this case, the Defendants will be given a small window of time within which to conduct discovery in an attempt to produce evidence to support their claim that the commissioner districts "may reasonably be said to advance [a] rational [county] policy." *Mahan*, 410 U.S. at 328.

## 2. Defendants' Motion for Summary Judgment

The Court will allow Defendants to amend their answer to assert the affirmative defenses of laches, waiver, estoppel and expiration of the statute of limitations. Defendants filed a Motion for Summary Judgment, Doc. 36, seeking judgment in their favor on the affirmative defenses of laches

---

[2]SDCL § 7-8-10 provides:

> The board of county commissioners, at its regular meeting in February of each year ending in the numeral 2, after giving notice by publication for one week in the official newspapers of the county, shall change the boundaries of the commissioner districts if such change is necessary in order that each district shall be as regular and compact in form as practicable and it shall so divide and redistrict its county that each district may contain as near as possible an equal number of residents, as determined by the last preceding federal decennial census; or the board may, at its discretion, choose to have all of its commissioners run at large.

7

and expiration of the statute of limitations. For the reasons set forth below, the motion will be denied.

The basic premise of Defendants' motion is that the current commissioner districts have been in place since 1968, and Plaintiffs' 37-year delay in not bringing this action until 2005 should bar their claims. The fatal flaw to this premise, however, is that Plaintiffs are not claiming the commissioner districts as they existed in 1968, based upon the population at that time, violated their rights. Rather, Plaintiffs' claim that the commissioner districts should have been changed in February 2002 to comply with the 2000 census and that each new election held with the existing districts violates their constitutional rights and Section 2 of the Voting Rights Act ("VRA").

Three voting rights cases in which the laches defense has been successful are cited by Defendants in support of their position that all of Plaintiffs' claims are barred by the doctrine of laches. *See White v. Daniel*, 909 F.2d 99 (4th Cir. 1990); *Arizona Minority Coalition for Fair Redistricting v. Arizona Ind. Redistricting Comm'n*, 366 F.Supp.2d 887, 907-09 (D. Ariz. 2005); *Marshall v. Meadows*, 921 F.Supp. 1490, 1493-94 (E.D. Va. 1996). All three cases are distinguishable from the present case. The plaintiffs in those cases waited until either elections or deadlines relating to elections were imminent before filing their claims. The courts found the plaintiffs' delay unjustified and barred their claims. Plaintiffs in the present case, however, did not file their action when an election or a deadline relating to an election was imminent.[3] Contrary to Defendants' characterization of Plaintiffs' claims as being based upon the 1968 boundaries and asserting there was a 37-year delay, Plaintiffs are challenging the failure to redistrict in February 2002 and that all future elections conducted according to that plan are unconstitutional and violate the VRA. Defendants are not entitled to summary judgment on their laches defense.

---

[3]The next scheduled election for the Charles Mix County Commission is on November 7, 2006. *See* SDCL § 7-8-1 (2004) (providing that "any commissioner who represents an odd-numbered ... district shall run for election at the general election at which the Governor is elected."; Charles Mix County is an odd-numbered district, i.e., 17.); S.D. Const. art.IV, § 2 (providing that the Governor shall be "elected for a term of four years at a general election held in a nonpresidential election year.").

8

Regarding their statute of limitations argument, Defendants contend that all of Plaintiffs' claims are barred by South Dakota's general statute of limitations for personal injury. South Dakota law provides that a personal injury action must be commenced within three years after the cause of action accrues. *See* SDCL § 15-2-14(3). Because the voting district boundaries in Charles Mix County were last changed in 1968, Defendants claim Plaintiffs would have had to commence an action not later than 1971. Like the laches defense, the statute of limitations defense fails because Plaintiffs do not claim the boundaries as they existed in 1968 were unconstitutional or in violation of the VRA. Rather, the Defendants' failure to redistrict in February 2002 is the basis of their claim, and this action was filed within three years of that conduct. Moreover, each time an election occurs with the current boundaries for commissioner districts, Plaintiffs suffer an alleged injury. Accordingly,

IT IS ORDERED:

1. That Defendants' Motion to Stay, Doc. 20, is denied as moot.

2. That the parties shall have until October 3, 2005, to conduct discovery on the issue of whether population equality in Charles Mix County commissioner districts is possible if the boundaries of townships, cities and towns are to be kept intact in the process of redistricting the county.

3. That, on or before October 11, 2005, Defendants shall file and serve any additional materials and brief on the issue set forth in paragraph 2 that they desire the Court to consider in ruling on Plaintiffs' summary judgment motion. On or before, October 25, 2005, Plaintiffs shall file and serve a reply to Defendants' submissions on the issue set forth in paragraph 2.

4.  That Defendants' Motion to Amend Answer, Doc. 24, is granted.

5.  That Defendants' Motion for Summary Judgment, Doc. 36, is denied.

Dated this 8th day of September, 2005.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
        DEPUTY