

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| | \* | |
| EVELYN A. BLACKMOON; ROBERT | \* | CIV 05-4017 |
| W. COURNOYER; and | \* | |
| ALAN FLYING HAWK, | \* | |
| | \* | |
| Plaintiffs, | \* | |
| vs. | \* | MEMORANDUM OPINION |
| | \* | AND ORDER |
| CHARLES MIX COUNTY; CARROL | \* | |
| ALLEN; KEITH MUSHITZ; and | \* | |
| SHARRON DRAPEAU, in their official | \* | |
| capacities as members of the Charles Mix | \* | |
| County Commission; and CHRIS | \* | |
| PAZOUR, in her official capacity as | \* | |
| Auditor of Charles Mix County, | \* | |
| | \* | |
| Defendants. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court are Plaintiffs' Motion for Further Relief, Doc. 87, and Defendants' Motion for Summary Judgment and Motion to Dismiss, Doc. 93. These motions have been fully briefed and will be decided based upon the written record in this case.

## BACKGROUND

The Court previously found in favor of Plaintiffs on their one-person, one-vote claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Defendants submitted and Plaintiffs agreed with Defendants' remedial proposal to solve the malapportionment violation. The Court adopted Defendants' remedial proposal on July 12, 2006. (Memorandum Opinion and Order, Doc. 84.) In the same Order adopting the remedial proposal to solve the malapportionment violation, the Court set forth a schedule to resolve the remaining claims in this action, namely: (1) Claim Two in the Complaint that the existing districts for the Charles Mix County Commission dilute Native American voting strength in violation of the rights guaranteed to

the plaintiffs by Section 2 of the Voting Rights Act of 1965; (2) Claim Three that the existing districts for the Charles Mix County Commission were enacted or are being maintained with the discriminatory purpose of denying or abridging the right of Native Americans to vote on account of race or color in violation of rights guaranteed to the plaintiffs by the Fourteenth and Fifteenth Amendments to the United States Constitution; and (3) Claim Four that the existing districts for the Charles Mix County Commission were enacted or are being maintained with the discriminatory purpose of denying or abridging the right of Native Americans to vote on account of race or color in violation of rights guaranteed to the plaintiffs by Section 2 of the Voting Rights Act of 1965.

In response to the Court's Order, Plaintiffs filed a Motion for Further Relief, Doc. 87, requesting that the Court award additional relief on the basis of the malapportionment violation. First, Plaintiffs request that the Court immediately authorize the appointment of federal observers in Charles Mix County under 42 U.S.C. § 1973a(a), until January 1, 2007.   Second, Plaintiffs request that the Court enter judgment in favor of Plaintiffs.  Third, Plaintiff seek authorization for the appointment of federal observers under 42 U.S.C. § 1973a(a) until January 1, 2007.  Fourth, Plaintiffs ask that the Court retain jurisdiction over this action under 42 U.S.C. § 1973a(c) until January 1, 2013.  Fifth, Plaintiffs seek an award of nominal damages.

The primary objection raised by Defendants to Plaintiffs' requests for additional relief is that Plaintiffs are not entitled to relief under the Voting Rights Act because they have not prevailed on their Voting Rights Act claims and that such relief is not available for a malapportionment violation. Defendants also contend that the Court has already ruled on Plaintiffs' requests for relief under 42 U.S.C. § 1973a(a) in its July 12, 2006 Order.

The Court noted in its prior Order that Plaintiffs were requesting remedies under the Voting Rights Act, but the Court specifically stated that it had not yet ruled on Plaintiffs' claims under the Voting Rights Act.  A briefing schedule was then established to resolve Plaintiffs' remaining claims in the Complaint.  Despite Defendants' position that the Court has already denied relief under 42 U.S.C. § 1973a for a malapportionment violation, the Court has not yet ruled on whether Plaintiffs

2

are entitled to such relief.  To the extent that the Court's previous Order could be construed to deny relief under 42 U.S.C. § 1973a for a malapportionment violation, the Court now makes clear it did not deny such relief in that Order.

## DISCUSSION

### A.   Plaintiffs' Motion for Further Relief

The first type of relief requested by Plaintiffs is to authorize the appointment of Federal observers by the Director of the Office of Personnel Management in an interlocutory order, which relief is provided by 42 U.S.C. § 1973a(a) (as amended):

(a) Authorization by court for appointment of Federal observers

Whenever the Attorney General or an aggrieved person institutes a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision the court shall authorize the appointment of Federal observers by the Director of the Office of Personnel Management in accordance with section 1973d of this title to serve for such period of time and for such political subdivisions as the court shall determine is appropriate to enforce the voting guarantees of the fourteenth or fifteenth amendment (1) as part of any interlocutory order if the court determines that the appointment of such observers is necessary to enforce such voting guarantees or (2) as part of any final judgment if the court finds that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred in such State or subdivision: *Provided*, That the court need not authorize the appointment of observers if any incidents of denial or abridgement of the right to vote on account of race or color, or [language group] (1) have been few in number and have been promptly and effectively corrected by State or local action, (2) the continuing effect of such incidents has been eliminated, and (3) there is no reasonable probability of their recurrence in the future.

42 U.S.C. § 1973a(a) (as amended by the Fannie Lou Hamer, Rosa Parks, and Coretta Scott King voting Rights Act Reauthorization and Amendments Act of 2006, Pub.L. 109-246, July 27, 2006, 120 Stat. 580).

Plaintiffs contend that § 1973a(a) does not limit its relief to violations of the Voting Rights Act.  Section 1973a(a) refers to violations of the voting guarantees of the fourteenth *or* fifteenth amendment brought in a proceeding under *any statute*, rather than violations of any specific statute.

3

Thus, Plaintiffs' position is that the plain meaning of the statute allows the Court to award relief under § 1973a(a) for malapportionment violations under the Fourteenth Amendment. Defendants disagree that the plain meaning of the statute allows Plaintiffs to seek relief under § 1973a(a) without a finding that they were injured by racial discrimination in the electoral process.

The issue presented by the parties is whether the special remedies provided in 42 U.S.C. § 1973a(a) are available to a person who established a malapportionment violation but has not established that he or she was injured by an act of discrimination. The parties' positions regarding the meaning of § 1973a(a) requires the Court to interpret the statute. "Statutes are to be interpreted as a whole ...." *Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002). "In particular, courts should not interpret one provision 'in a manner that renders other sections of the same statute inconsistent, meaningless, or superfluous.'" *Id.* (quoting *United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir. 1999)). In addition, the court should "give effect, if possible, to every clause and word of a statute." *Moskal v. United States*, 498 U.S. 103, 109 (1990) (quotation marks and citations omitted). The starting point for statutory construction is the plain meaning of its words. *See United States v. Maswai*, 419 F.3d 822, 824 (8th Cir. 2005). "If the language of a statute is unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary." *United States v. White Plume*, 447 F.3d 1067, 1072 (8th Cir. 2006). If a statute is ambiguous, however, the Court may look to its legislative history in determining the statute's meaning. *See United States v. Cacioppo*, 2006 WL 2404056, *5. "[A] statute is ambiguous if it is capable of being understood in two or more possible senses or ways." *White Plume*, 447 F.3d at 1074 (internal quotation marks and citations omitted).

If § 1973a(a) did not contain the last sentence, Plaintiffs' argument that the plain meaning of the statute would entitle them to the special remedies therein, without proving discrimination, could be sustained as the plain meaning of the statute. But, if the Court were to interpret the first reference to the Fourteenth Amendment in § 1973a(a) as including malapportionment violations, which do not require a finding of discrimination on the basis of race, color or language group, the

proviso in § 1973a(a)[1] would not make sense. The proviso, which gives the Court discretion to deny authorization for observers, is triggered when the denial or abridgement of the right to vote was based on race, color or language group. If Plaintiffs' interpretation is followed, the proviso could not be invoked if Plaintiffs proved a malapportionment violation that did not involve racial or language group discrimination. That is, if Plaintiffs' interpretation is adopted, a one-person, one-vote violation under the Fourteenth Amendment would require the Court to authorize the appointment of federal observers as part of any interlocutory order or final judgment if the statutory requirements are met, but the proviso giving the Court discretion not to authorize appointment of observers could not be invoked because Plaintiffs' Fourteenth Amendment claim did not involve the denial or abridgement of the right to vote on account of race, color or language group. Thus, a person who proved a malapportionment claim would have a better chance of getting a federal observer appointed than someone who proved racial discrimination in the electoral process. Given that the Voting Rights Act of 1965 and its subsequent amendments were enacted in response to racial and language group discrimination in the electoral process, rather than to address malapportionment violations not based upon discrimination, it would be nonsensical for authorization of observers to be mandatory for a malapportionment violation but be subject to an exception if there is racial or language group discrimination in the electoral process. Under Plaintiff's interpretation a person with a malapportionment violation would be more likely to qualify for the special remedies under § 1973a(a) than someone that has suffered discrimination in the electoral process.

An interpretation of the statute that requires the Plaintiffs to be injured by an act of racial or language group discrimination to invoke the special remedies available under § 1973a(a), is consistent with the proviso. That is, a person injured by an act of discrimination is entitled to the authorization of federal observers if the statutory requirements are met, unless the three elements of the exception are satisfied. This interpretation gives meaning to all of the words in the statute and does not render the proviso meaningless.

---

[1]The proviso states: "*Provided* That the court need not authoriz e the appointment of observers if any incidents of denial or abridgement of the right to vote on account of race or color, or [language group]" if three conditions are met. 42 U.S.C. § 1973a(a).

In the context of Plaintiffs' malapportionment claim under the Fourteenth Amendment, where Plaintiffs have not established racial discrimination, the Court finds § 1973a(a) ambiguous. Thus, the Court will turn to the legislative history of the Voting Rights Act of 1965 and its amendments.

The Court has reviewed the legislative history of the 1975 amendment to the Voting Rights Act of 1965 and concludes that relief under Section 3(a) of the Act, codified at 42 U.S.C. § 1973a(a), is not available to Plaintiffs on their malapportionment claim. The Voting Rights Act of 1965 mentioned only the authorization to appoint federal examiners to enforce the guarantees of the fifteenth amendment. *See Pub.L.* 89-110, Title I, § 3, Aug. 6, 1965, 79 Stat. 437. This section was amended in 1975 to add a reference to "voting guarantees of the fourteenth or fifteenth amendments." The reason set forth in the legislative history for including a reference to the fourteenth amendment was to ensure that the expansion of the Voting Rights Act, by the 1975 amendments to include persons defined as language minorities, was constitutional:

> The Fourteenth Amendment is added as a constitutional basis for these voting rights amendments. The Department of Justice and the United States Commission on Civil rights have both expressed the position that all persons defined in this title as 'language minorities' are members of a 'race or color' group protected under the Fifteenth Amendment. However, the enactment of the expansion amendments under the authority of the Fourteenth as well as the Fifteenth Amendment, would doubly insure the constitutional basis for the Act.

S. Rep. 94-295 at 47-48, 1975 U.S.C.C.A.N. 774 at 814-15. A second reference to the reason for including claims under the Fourteenth Amendment in the 1975 amendments supports the view that the inclusion of the Fourteenth Amendment related to claims based upon language group discrimination and is set forth in footnote 40 of the legislative history:

> Section 205 of S. 1279 also amends Section 3 [of the Voting Rights Act] to authorize courts to apply the Act's special remedies in suits brought to enforce the guarantees of the 14th Amendment. This amendment was adopted in part because the Committee is aware of the significant numbers of suits brought under the 14th Amendment to enforce the voting rights of Spanish-speaking citizens.

6

S. Rep. 94-295, 1975 U.S.C.C.A.N. 774 at n.40.

In addition to the inclusion of violations of voting guarantees of the Fourteenth Amendment, Section 3 of the Voting Rights Act was amended in 1975 to allow private parties the same remedies under Section 3 that were previously afforded only to the Attorney General. *See Pub.L.* 94-73, Aug. 6, 1975, 89 Stat. 400. The legislative history defines the term "aggrieved person" as "any person injured by an act of discrimination." S. Rep. 94-295 at 40, 1975 U.S.C.C.A.N. 774, 806. In the present case, Plaintiffs have established a one-person, one-vote violation, but they have not established they have been injured by an act of discrimination. Thus, they have not established they are "aggrieved person[s,]" as defined in the legislative history, entitling them to the special remedies available under § 1973a(a) on their one-person, one-vote claim.

In support of their position, Plaintiffs point out that at the time the Voting Rights Act was amended to include violations of the Fourteenth Amendment in 1975, the Supreme Court had recognized one-person, one-vote claims under the Fourteenth Amendment's Equal Protection Clause. *See Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (explaining that, "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."). The Court agrees that by 1975, the Supreme Court had recognized malapportionment claims under the Fourteenth Amendment. The legislative history of the 1975 amendments refers to such claims, but not does indicate that such claims would trigger the special remedies under § 1973a(a). Rather, the legislative history at least implies that remedies under the Voting Rights Act of 1965 are not available in one-man, one-vote cases:

> It is ironic that the Supreme Court's 'one-man-one vote' ruling (Reynolds v. Sims, 377 U.S. 533 (1964)) has created opportunities to disfranchise minority voters. Having to redraft district lines in compliance with that ruling, jurisdictions may not always take care to avoid discriminating against minority voters in that process. By providing that Section 5 protections not be removed before 1985, S. 1279 would guarantee Federal protection of minority voting rights during the years that the post-census redistrictings will take place."

S. Rep. 94-295, 1975 U.S.C.C.A.N. 774 at 784. A review of the legislative history makes clear that Congress was intending to provide remedies to persons aggrieved by racial and language group

7

discrimination in the electoral process, not to provide a remedy for malapportionment violations where no discrimination has been established.

If § 1973a(a) were found to be unambiguous to provide relief for violations of the voting guarantees of the Fourteenth Amendment in the absence of racial or language group discrimination, the Court finds that such an interpretation "will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989).

In their brief in support of the Motion, Plaintiffs refer to racial discrimination in the electoral process as the reason the Court should have immediately authorized the appointment of federal observers to allow observers to be present at the November 7, 2006, election. But Plaintiffs' claims of racial discrimination in the electoral process have not been resolved and the Court has not found on the record in this case that racial discrimination in the electoral process has occurred in Charles Mix County, which is the reason the Court established a briefing schedule on Plaintiffs' remaining claims of racial discrimination. Rather than pursuing their racial discrimination claims, however, Plaintiffs are seeking remedies under 42 U.S.C. § 1973a without having established a claim of discrimination on the basis of race or color. For the reasons set forth above, the Court concludes that Plaintiffs are not entitled to the special remedies available under 42 U.S.C. § 1973a(a).

The second relief requested by Plaintiffs is that the Court enter Judgment in favor of the Plaintiffs. This will be addressed in connection with Defendants' summary judgment motion and motion to dismiss discussed below.

The third type of relief requested by Plaintiff is that the Court authorize the appointment of federal observers under 42 U.S.C. § 1973a(a) until January 1, 2013, as part of a final judgment. For the same reasons set forth above in the discussion of Plaintiffs' first request of relief for authorization of appointment of federal observers as part of an interlocutory order, Plaintiffs' third request for relief is denied.

8

Fourth, the Plaintiffs request that the Court retain jurisdiction over this action under 42 U.S.C. § 1973a(c) until January 1, 2013, which provides as follows:

> (c) Retention of jurisdiction to prevent commencement of new devices to deny or abridge the right to vote
>
> If in any proceeding instituted by the Attorney General or an aggrieved person under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State or political subdivision the court finds that violations of the fourteenth or fifteenth amendment justifying equitable relief have occurred within the territory of such State or political subdivision, the court, in addition to such relief as it may grant, shall retain jurisdiction for such period as it may deem appropriate and during such period no voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different from that in force or effect at the time the proceeding was commenced shall be enforced unless and until the court finds that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or [language group]: *Provided*, That such qualification, prerequisite, standard, practice, or procedure may be enforced if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the court's findings nor the Attorney General's failure to object shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure.

Plaintiffs' argument for the retention of jurisdiction fails for the same reasons as the first request for relief under § 1973a(a). Plaintiffs have not yet established they are "aggrieved person[s]" as defined in the legislative history of the 1975 Amendments to the Voting Rights Act of 1965, which added a reference to voting guarantees under the Fourteenth Amendment. Moreover, if Plaintiffs were entitled to relief under § 1973a(c) for a malapportionment violation, without establishing racial discrimination, it would be nonsensical to require the State or political subdivision to prove that any change to their voting qualification, prerequisite, standard, practice or procedure "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color or [language group]." *Id.*

9

**B.      Defendants' Motion for Summary Judgment and Motion to Dismiss**

Defendants contend they are entitled to summary judgment on Plaintiffs' Claims Two, Three and Four and that they are entitled to dismissal of Plaintiffs' Claim Three under Rule 12(b)(6). They claim Plaintiffs' second and fourth claims are moot because those claims are based upon the Charles Mix County districts that are no longer in place. Defendants contend that no relief could be awarded to Plaintiffs on Claims Two, Three or Four, thus, no live or present controversy exists.

Plaintiffs counter that until the Court rules on their Motion for Further Relief, it is too soon to determine whether Plaintiffs' other claims are moot. If the Court agrees with Defendants' argument that Plaintiffs are not entitled to the remedies under 42 U.S.C. § 1973a for a malapportionment violation, then Plaintiffs argue Plaintiffs' remaining claims are not moot because they could go forward to prove their claims of racial discrimination based upon the Charles Mix County districts that existed before the Court ruled on the malapportionment claim.

The Court agrees with Plaintiffs that their remaining claims are not moot because they may be entitled to the remedies under 42 U.S.C. § 1973a(a) (as amended) if they prevail on any of their remaining claims. Claims Two, Three and Four are based upon the Charles Mix County districts that existed before the Court ruled on the malapportionment claim and are not based upon the districts that currently exist. But § 1973a(a) anticipates the possibility that conditions violating one's voting rights may change, because it provides an exception to the requirement that the Court appoint Federal observers as part of a final judgment in cases where violations "have occurred." The exception states: "*Provided*, That the court need not authorize the appointment of observers if any incidents of denial or abridgement of the right to vote on account of race ... (1) have been few in number and have been promptly and effectively corrected by State or local action, (2) the continuing effect of such incidents has been eliminated, and (3) there is no reasonable probability of their recurrence in the future." 42 U.S.C. § 1973a(a) (as amended). Thus, the fact that the voting districts in Charles Mix County have been changed does not automatically mean Plaintiffs cannot be granted relief under 42 U.S.C. § 1973a(a). Rather, this statute contemplates situations where the denial or abridgement of the right to vote on account of race has been corrected by State or local action, but

there may still be a need for the appointment of Federal observers based upon past violations. The Court is not persuaded by Defendants' argument that Plaintiffs' remaining claims are moot and their motions will be denied. Accordingly,

IT IS ORDERED:

1.      That Plaintiffs' Motion for Further Relief, Doc. 87, is denied.

2.      That Defendants' Motion for Summary Judgment and Motion to Dismiss, Doc. 93, is denied.

3.      In light of the denial of Defendants' summary judgment motion, the Court will establish a separate scheduling order to resolve Claims Two, Three and Four in Plaintiffs' Complaint.

Dated this 30th day of March, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY
                DEPUTY

11